IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| DORA GLORIA SILVA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:17-cv-00305-Y-BP |
| | § | |
| NANCY A. BERRYHILL, | § | |
| Acting Commissioner of the Social | § | |
| Security Administration, | § | |
| | § | |
| Defendant. | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE, NOTICE, AND ORDER

Plaintiff Dora Gloria Silva ("Silva") filed this action under 42 U.S.C. § 405(g), seeking judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of her application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("SSA"). ECF No. 1. After considering the pleadings, briefs, and the administrative record, the undersigned **RECOMMENDS** that Senior United States District Judge Terry R. Means **AFFIRM** the Commissioner's decision.

## FINDINGS AND CONCLUSIONS

### I. STATEMENT OF THE CASE

Silva filed an application for DIB on October 30, 2013, alleging that her disability began on November 2, 2010. (Transcript ("Tr.") 13). On September 22, 2015, Silva amended her application, stating that her disability began on October 30, 2013. (Tr. 13). The Commissioner denied her claim initially on June 4, 2014, and denied it again on reconsideration on August 1, 2014. (Tr. 13). Silva requested a hearing, which was held before Administrative Law Judge ("ALJ") Anne H. Pate on September 22, 2015 in Dallas, Texas, with Silva and her attorney present.

(Tr. 13). The ALJ issued her decision on October 30, 2015, finding that Silva was not disabled. (Tr. 13–23).

Specifically, the ALJ employed the statutory five-step analysis and established during step one that Silva had not engaged in substantial gainful activity since October 30, 2013, the alleged disability onset date. (Tr. 13, 158). At step two, the ALJ determined that Silva had the severe impairments of affective disorder, schizophrenia, asthma, chronic obstructive pulmonary disease (COPD), and obesity. (Tr. 15). At step three, the ALJ found that Silva's impairments did not meet or medically equal one of the impairments listed in 20 C.F.R. Pt. 404(p). (Tr. 15). In particular, the ALJ concluded that Silva retained the residual functional capacity ("RFC") to perform medium work except mentally, "the claimant is able to understand, remember and carry out simple instructions, make decisions, attend and concentrate for extended periods, accept instructions and interact occasionally" with others. (Tr. 17). At step four, the ALJ determined that Silva was unable to perform any past relevant work. (Tr. 21–22). And at step five, the ALJ decided that there were a significant number of jobs in the national economy that Silva could perform. (Tr. 22–23).

The Appeals Council denied review on February 6, 2017. (Tr. 1). Therefore, the ALJ's decision is the Commissioner's final decision and is properly before the Court for review. *Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) ("[T]he Commissioner's 'final decision' includes the Appeals Council's denial of [a claimant's] request for review.").

## II. FACTUAL BACKGROUND

According to Silva's pleadings, testimony at the administrative hearing, and the administrative record, she was thirty-two years old on the alleged disability onset date, and thirty-four years old at the time of the administrative hearing. (Tr. 23, 142). She completed a seventh grade education. (Tr. 35). Her past relevant work includes serving as a gate guard and fast food

worker. (Tr. 49–50). Silva asserts that her physical and mental impairments render her disabled under the SSA.

## III.    STANDARD OF REVIEW

Title II, 42 U.S.C. § 404 *et seq.*, of the SSA governs the disability insurance program in addition to numerous regulations concerning disability insurance. *See* 20 C.F.R. Pt. 404. The SSA defines a disability as a "medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months" that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. § 423(d); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999).

To determine whether a claimant is disabled and thus entitled to disability benefits, the Commissioner employs a sequential five-step analysis. 20 C.F.R. § 404.1520. First, the claimant must not be presently working at any substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial gainful activity" means work activity involving the use of significant physical or mental abilities for pay or profit. *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002); 20 C.F.R. § 404.1527. Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(c); *see Stone v. Heckler*, 752 F.2d 1099, 1100-03 (5th Cir. 1985). Third, disability exists if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404, Subpt. P, App. 1. 20 C.F.R. § 404.1520(d). Fourth, if the claimant's medical status alone does not constitute a disability, the impairment or impairments must prevent the claimant from returning to her past relevant work. 20 C.F.R. § 404.1520(e). Fifth, the impairment must prevent the claimant from doing any work, considering the claimant's RFC, age, education, and past work experience. *Crowley v. Apfel*, 197 F.3d 197, 197-98 (5th Cir. 1999); 20 C.F.R. § 404.1520(f). "The claimant

bears the burden of showing that [she] is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007). Before proceeding to steps four and five, the Commissioner must assess a claimant's RFC—"the most [a claimant] can still do despite [her] limitations." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); 20 C.F.R. § 416.945(a)(1).

The Court's decision is limited to a determination of whether the Commissioner applied the correct legal standards and whether substantial evidence in the record as a whole supports the decision. *Audler*, 501 F.3d at 447; *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). "Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. It is more than a mere scintilla and less than a preponderance. A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (quoting *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000)). The Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but it will carefully scrutinize the record to determine if evidence is present. *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988); *Harris*, 209 F.3d at 417. "Conflicts in the evidence are for the [Commissioner] and not the courts to resolve." *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000) (quoting *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999)).

## IV. ANALYSIS

Silva raises only one issue on appeal. She claims that the ALJ failed to mention and properly weigh an examining source's medical opinion.

### A. The ALJ Properly Weighed the Medical Source Opinions of Record.

Silva alleges that the ALJ erred in declining to accord controlling weight to the opinion of Dr. Diane Allen, an examining psychologist. (Pl.'s Br. at 4–5). Silva argues that the ALJ erred in "giv[ing] the opinions of consultative examiner Dr. Allen little weight as her opinions were based on a one-time assessment and they are not supported by the claimant's treating history and her functional abilities when she is [compliant] with treatment." (Pl.'s Br. at 21). Silva asserts that the ALJ's failure to give proper weight to the opinion of Dr. Allen and to properly evaluate that opinion resulted in both an inaccurate RFC finding, and likely affected the ALJ's ultimate finding regarding her disability status. (Pl.'s Br. at 3).

Silva relies on the Fifth Circuit's decisions in *Newton* and *Spellman*, which require ALJs—when faced with inconclusive or controverting evidence—to perform a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. 404.1527(d)(2) or otherwise seek clarification or additional evidence from the treating physician in accordance with 20 C.F.R. 404.1512(e). *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000); *Spellman v. Shalala*, 1 F3d 357 (5th Cir. 1993). While it is true that under the applicable regulations, the ALJ must follow a six factor detailed analysis unless the ALJ gives "a treating source's opinion controlling weight," that analysis only applies when a treating source opinion is (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "not inconsistent with" other substantial evidence." *Newton v. Apfel,* 209 F.3d 448, 455 (5th Cir.2000) (quoting *Martinez v. Chater,* 64 F.3d 172, 176 (5th Cir.1995) (quoting 20 C.F.R. § 404.1527(d)(2)). In addition, "if the ALJ determines that the treating physician's records are inconclusive or otherwise inadequate to receive controlling weight, absent other medical opinion evidence based on personal examination

or treatment of the claimant, the ALJ must seek clarification or additional evidence from the treating physician in accordance with 20 C.F.R. § 404.1512(e)." *Id.*

Silva suggests that the ALJ "failed to apply the listed factors" contained in 20 C.F.R. §§ 404.1527 and 416.927 in determining that Dr. Allen's opinions expressed in her medical source statement were not entitled to controlling weight. (Pl.'s Br. at 8–9). However, the ALJ stated that she had considered opinion evidence in accordance with the requirements of 20 C.F.R. §§ 404.1527 and 416.927 and determined that Dr. Allen's medical source statement was not entitled to controlling weight. (Tr. 16, 19). In this case, the ALJ was not required to explicitly apply the factors. *See Newton*, 209 F.3d at 453; *Heck v. Colvin*, 674 F. App'x 411, 415 (5th Cir. Jan. 9, 2017) (the ALJ did not err in failing to consider the regulation factors before declining to give controlling weight to a treating physician's opinion "because such consideration is required only when there is no other reliable evidence from treating physicians that contradicts the [treating physician's opinion]").

As evidenced in her decision, the ALJ considered all evidence of record in reaching her determination that Silva was not disabled, including the medical records from Trinity Center Homeward Bound, Metrocare Services, Parkland Hospital, the opinions of Dr. Allen, the opinions of the State agency consultants, and the subjective complaints of Silva herself. (Tr. 17–21). Several state agency medical consultants ("SAMCs") evaluated Silva. (Tr. 53–78). The ALJ relied upon Dr. Mark Schade's Medically Determinable Impairments and Severity report, Dr. George Carrion and Dr. Scott Spoor's Physical Residual Functional Capacity assessments, and Dr. Susan Thompson's Mental Residual Functional Capacity assessment. (Tr. 53–78). At issue is whether the ALJ erred in giving "significant weight" to the SAMCs assessments and reports while giving "little weight" to Dr. Allen's opinions.

In the assessment dated July 30, 2014, Dr. Thompson opined that Silva's presentation was not consistent with the record and that "the statements made by the claimant regarding symptom-related functional limitations and restrictions cannot reasonably be accepted as consistent with the medical and other evidence in the record." (Tr. 74). "[A]lthough there is no statutorily or judicially imposed obligation for the ALJ to list explicitly all the evidence she takes into account in making his findings, [20 C.F.R.] § 404.1527(f)(2) does require that the ALJ articulate the weight given to [the opinions of SAMCs]." *Hammond v. Barnhart*, 124 F. App'x 847, 851 (5th Cir. 2005). Findings of fact made by SAMCs regarding the nature and severity of an individual's impairments are treated as expert opinion evidence (from non-examining sources) at both the administrative hearing and Appeals Council levels of administrative review. 20 C.F.R. § 416.927(e).

Silva argues that the ALJ erred in rejecting Dr. Allen's medical opinion because she did not provide sufficient rationale or an explanation for doing so. (Pl.'s Br. at 8-9). The ALJ need not specifically list evidence accepted and rejected in reaching her findings. *See Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994). However, the ALJ gave her rationale in giving Dr. Allen's opinion "very little weight" because her opinions were based on a one-time assessment and were not supported by Silva's treatment history. Contrary to Silva's argument that the ALJ wholly ignored Dr. Allen's report, the ALJ referenced Dr. Allen's report at step four of the statutory five-step analysis. Specifically, the ALJ noted that Dr. Allen reported that Silva's mood was depressed and that she expressed thoughts of paranoia, had difficulty remembering complex instructions due to her symptoms, but appeared able to do basic self-care activities. (Tr. 19–20).

As discussed above, the ALJ must apply the factors only if there is no other reliable medical evidence from another treating or examining physician. *See Newton*, 209 F.3d at 455-57. Here, the ALJ referenced and analyzed the medical reports and findings of Drs. Schade, Carrion, Spoor,

Thompson, and Allen. (Tr. 53-78). As to Silva's mental impairments, Dr. Thompson noted that these conditions would not significantly limit Silva's ability to remember locations and work-like procedures, ability to carry out short simple instructions, perform activities within schedule, maintain regular attendance, and be punctual within customary tolerances, or ability to make simply work-related decisions. (Tr. 75). Furthermore, Dr. Schade's psychiatric review of Silva indicated that she had mild restriction of daily living activities and in maintaining social functioning. (Tr. 58). Both Dr. Thompson and Dr. Schade noted that Silva's statements regarding her mental impairments could not be reasonably accepted as consistent with the medical evidence in the record. (Tr. 58, 75). The ALJ properly weighed all of the multiple medical opinions in rendering her findings, including Dr. Allen's opinions. (Tr. 29-30).

The evidence in the record indicates that Silva has been prescribed medication for her mental impairments since 2013. (Tr. 18, 239, 348). However, the record also indicates that she frequently failed to appear for follow-up appointments and failed to follow the treatment plan as prescribed by the Metrocare Services physicians. (Tr. 18-19, 358–359, 371, 468). Silva argues that non-compliance with her prescribed treatment evidences that the ALJ erred in her decision. (Pl's Br. at 8). The Fifth Circuit's precedent is clear that when an impairment can reasonably be remedied or controlled by medication or treatment, it is not disabling and does not affect the claimant's RFC. *See Johnson v. Bowen,* 864 F.2d 340, 348 (5th Cir. 1988) (*per curiam*). A claimant must follow her physician's prescribed treatment plan if it can restore the claimant's ability to work. 20 C.F.R. § 404.1530(a). If a claimant does not follow the prescribed plan, without good cause, an ALJ cannot find that the claimant is disabled. 20 C.F.R. § 404.1530(b); *Johnson v. Sullivan*, 894 F.2d 683, 685 (5th 1990).

As noted by the ALJ, Silva reported that she was off her medications from March 2013 until November 2013. Tr. 18, 308. Soon after, Silva reported increased anxiety, reporting that she was taking Lithium only once a day, rather than twice a day as prescribed. Tr. 436. In February 2014, Silva reported that she was complying with her prescribed treatment and was able to complete daily tasks since using the antipsychotic medication Geodon. (Tr. 19, 320). The record reflects that Silva's conditions were stable when she was on medication and that she presented normal attention and behavior during follow-up appointments. (Tr. 295, 350). Thus, evidence in the record shows that Silva's mental impairments were partially, if not completely, controlled when she followed the prescribed treatment plan.

Silva also argues that Dr. Allen's assignment of a Global Assessment of Functional (GAF) score of 21 evidences Silva's inability to perform a number of basic work-related activities on a sustained basis. (Pl's Br. 5–6). "[F]ederal courts have declined to find such a strong correlation between an individual's GAF score and the ability or inability to work." *Jackson v. Colvin*, 2015 WL 7681262, at *3 (N.D. Tex. Nov. 5, 2015). Notably, "in the updated version of the DSM, the American Psychiatric Association no longer recommends the use of the GAF scale as a diagnostic tool for assessing a patient's functioning due to 'its conceptual lack of clarity . . . and questionable psychometrics in routine practice." *Spencer v. Colvin*, No. EP-15-CV-0096-DCG, 2016 WL 1259570, at *6 n.8 (W.D. Tex. Mar. 28, 2016) (quoting *American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders* 16 (5th ed. 2013) ("DSM–V")). The ALJ sufficiently considered Dr. Allen's GAF score and other GAF scores in the record that ranged from 21–40. (Tr. 233, 345). It is within the ALJ's province to resolve conflicts when an assigned GAF score by a consultative or treating physician's assessment conflicts with the treating source's own descriptions of the patient's mental symptoms and/or function. *See Hawkins v. Astrue*, 2011 WL

1107205, at *6 (N.D. Tex. Mar. 25, 2011) (explaining that "ALJ was not required to accept [consultive medical examiner's] assessment of plaintiff's GAF score [of 49] or explain the weight given to her opinions" and holding that ALJ's explanation—"that plaintiff's low GAF score was inconsistent with [consultive medical examiner's] other findings"—satisfied ALJ's duty under the regulations). Accordingly, the ALJ's explicit discussion of Silva's GAF scores satisfied her duty under the regulations.

Silva has not met her burden of proving that substantial evidence does not support the ALJ's determination. To the contrary, the evidence proves that the ALJ considered Dr. Allen's opinions, but determined that they were not consistent with the remaining credible evidence in the record.

## V.  CONCLUSION

The ALJ properly weighed the medical opinions of record. Because the ALJ applied the proper legal standards and substantial evidence in the record supports the ALJ's factual findings, the Commissioner's decision should be **AFFIRMED**.

## RECOMMENDATION

For the foregoing reasons, the undersigned **RECOMMENDS** that Senior United States District Judge Terry R. Means **AFFIRM** the Commissioner's decision.

## NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings,

conclusions, and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file, by the date stated above, a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party shall have until **November 28, 2017** to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation. It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket of the United States District Judge.

Signed November 14, 2017.

_____
Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE